1 | Stephen M. Harris (State Bar No. 110626)
smh@kpclegal.com
2 | KNAPP, PETERSEN & CLARKE
550 North Brand Boulevard, Suite 1500
3 | Glendale, California 91203-1922
Telephone:  (818) 547-5000
4 | Facsimile:  (818) 547-5329

5 | Robert L. Starr (State Bar No. 183052)
robert@starrlawmail.com
6 | THE LAW OFFICE OF ROBERT L. STARR
23277 Ventura Boulevard
7 | Woodland Hills, California 91364-1002
Telephone: (818) 225-9040
8 | Facsimile: (310) 225-9042

9 | Attorneys for Plaintiff
CHRISTINA PASCHAL, individually, and on
10 | behalf of a class of similarly situated individuals

11 |           UNITED STATES DISTRICT COURT

12 |           CENTRAL DISTRICT OF CALIFORNIA

13 |

14 | CHRISTINA PASCHAL, individually,          NO.
and on behalf of a class of similarly
15 | situated individuals,                     **PLAINTIFF'S CLASS ACTION**
16 |                Plaintiff,                  **COMPLAINT FOR:**
17 |          v.                                **1.     VIOLATIONS OF UNFAIR
                                                BUSINESS PRACTICES ACT;**
18 | MAZDA MOTOR OF AMERICA, INC.,             **2.     BREACH OF CALIFORNIA
                                                SECRET WARRANTY LAW;**
19 |                Defendant.                  **3.     BREACH OF EXPRESS
                                                WARRANTY**
20 |
                                                **JURY TRIAL DEMAND**
21 |
22 |
23 |
24 |
25 |
26 |
27 |
**KNAPP,**
**PETERSEN**
**& CLARKE** 28 |

-1-

1987469.1  08000/00933

**INTRODUCTION**

1.    Plaintiff CHRISTINA PASCHAL ("Plaintiff") brings this action for herself and on behalf all persons in the State of California who purchased or leased a 2004-2008 Mazda RX8 vehicle ("Class Vehicles"), manufactured, distributed, and sold by Mazda Motor of America, Inc., and/or its related subsidiaries or affiliates ("MAZDA" or "Defendant").

2.    All persons who have purchased or leased a Class Vehicle are herein referred to as Class Members ("Class Members").

3.    Because of defects in the design, manufacture, and assembly of the engines installed in the Class Vehicles, the Class Vehicles, and their engines, are by their nature susceptible to frequent mechanical failure.

4.    The nature of the mechanical failure is that the engines of the Class Vehicles are susceptible to engine flooding and fuel flooded spark plugs.

5.    The fuel flooding and fuel flooded spark plugs are caused by a defect in the design, manufacture, and assembly of the rotary engines installed in the Class Vehicles. When the engine floods, it will not start. Costly repairs are then necessary in order to restore a Class Vehicle to operational condition.

6.    Mazda's Rotary Engine Core Warranty was extended to 8 years and 100,000 miles by Mazda due to the tens of thousands of engine flooding conditions arising in Class Vehicles, described herein as the Engine Defect.

7.    The Class Vehicles originally came with a basic 4 year 50,000 mile warranty. MAZDA began selling the Class Vehicles in 2003. Even before April of 2004, MAZDA was aware of the Engine Defect. On April 14, 2004, MAZDA issued a Technical Service Bulletin ("TSB"), TSB#01-011/04. Attached as Exhibit "1" is the April 14, 2004 TSB.

8.    MAZDA continued to monitor the complaints and mechanical failures that occurred as a result of the Engine Defect, however, MAZDA never adequately remedied the Engine Defect.

KNAPP,
PETERSEN
& CLARKE

1987469.1   08000/00933

9. In May of 2008, MAZDA extended the warranty on the Class Vehicles so that the engines installed in the Class Vehicles would be covered under warranty for the first 8 years and 100,000 miles from the original warranty start date ("Warranty Extension"). Attached as Exhibit "2" is the May 2008 warranty extension.

10. The Warranty Extension was provided to owners and lessees of Class Vehicles in order to address complaints relating to the Engine Defect. Although MAZDA issued the Warranty Extension, MAZDA has never come up with an adequate remedy in order to eliminate the Engine Defect.

11. Furthermore, although MAZDA has issued the Warranty Extension, which also purported to reimburse owners and lessees of Class Vehicles if they paid money in order for repairs to be made as a result of the Engine Defect, MAZDA has failed to arrange for and pay for (under the Warranty Extension) all repairs that have been needed during the Warranty Extension time period due to the Engine Defect, and MAZDA has failed to fully reimburse owners and lessees of Class Vehicles for all charges they have incurred during the Warranty Extension time period due to repairs that have been made relating to the Engine Defect. MAZDA has routinely ignored the provisions of its own TSB's relating to the repair work which must be performed to remedy flooding arising due to the Engine Defect.

12. On December 26, 2008, MAZDA issued another TSB relating to the Engine Defect, TSB#01-015/08. Attached as Exhibit "3" is the December 26, 2008 TSB.

13. According to the TSB's Mazda is obligated to replace spark plugs as part of the repair. However, Plaintiff is informed and believes that as of May of 2013, MAZDA, in 37% of the 39,329 transactions analyzed, failed to pay for spark plugs or replace spark plugs as part of repairs that it had otherwise covered under the extended warranty. Moreover, as of October of 2013, Plaintiff is informed and believes as a result of her analysis that there were 69,249 warranty claims

KNAPP,
PETERSEN
& CLARKE

-3-

1987469.1  08000/00933

1   purportedly granted by Mazda, relating to vehicle flooding, and in 33,419 of these

2   transactions, Mazda failed to replace or pay for the spark plugs as part of the repair.

3       14.   As a result of MAZDA's misconduct alleged herein, Plaintiff and the

4   other owners and lessees of Class Vehicles have been harmed and have suffered

5   actual damages, in that owners and lessees of Class Vehicles have incurred, and will

6   continue to incur out of pocket unreimbursed costs and expenses relating to the

7   Engine Defect, or not be provided the full benefits of MAZDA's extended engine

8   core warranty, including being provided with new spark plugs as part of the repair.

9                                    **PARTIES**

10  **Plaintiff**

11      15.   Plaintiff Christina Paschal ("Plaintiff") resides in the state of Colorado,

12  but resided in the state of California when MAZDA refused to furnish to her the full

13  benefits of its warranty coverage.  Plaintiff purchased a used 2004 Mazda RX8.

14      16.   Plaintiff purchased this 2004 Mazda RX8 vehicle ("Paschal Vehicle")

15  primarily for her personal, family, or household purposes.  This vehicle was

16  manufactured, sold, distributed, advertised, marketed, and warranted by MAZDA,

17  and bears the Vehicle Identification No. JM1FE17NX40123927.

18      17.   Subsequent to Plaintiff purchasing the vehicle, Plaintiff experienced

19  engine fuel flooding on multiple occasions.  Although repairs that were made to the

20  Paschal Vehicle relating to the Engine Defect were initially paid for by MAZDA,

21  MAZDA refused to pay for all of the repairs that needed to be done to the Paschal

22  Vehicle as a result of the Engine Defect.

23      18.   In July of 2009, after MAZDA had issued the Warranty Extension, the

24  Paschal Vehicle experienced a mechanical failure due to the Engine Defect.  Plaintiff

25  requested that MAZDA pay for the repairs that were needed, and MAZDA

26  performed the work required by its extended Engine Core Warranty, including

27  replacing spark plugs, in order to de-flood the vehicle.

28      19.   In July of 2010, the Paschal Vehicle experienced another instance of

KNAPP,
PETERSEN
& CLARKE

-4-

1  flooding due to the Engine Defect. However, on this occasion, MAZDA refused to

2  replace the spark plugs as part of the repair of the flooding condition in the Paschal

3  Vehicle, even though MAZDA did pay for ignition coils under its extended warranty.

4        20.     True and correct copies of the July of 2009 and July of 2010 invoices

5  are attached hereto as exhibits 4-5, respectively.

6  **Defendant**

7        21.     MAZDA is a corporation organized and in existence under the laws of

8  the State of California and registered with the California Department of Corporations

9  to conduct business in California.  At all times relevant herein, MAZDA was

10  engaged in the business of designing, manufacturing, constructing, assembling,

11  marketing, distributing, and selling automobiles and other motor vehicles and motor

12  vehicle components throughout the United States of America.

13  **JURISDICTION**

14        22.     This is a class action.

15        23.     Members of the Proposed Plaintiff Class are citizens of states different

16  from the home state of Defendant.

17        24.     On information and belief, aggregate claims of individual Class

18  Members exceed $5,000,000.00, exclusive of interest and costs.

19        25.     Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332(d).

20  **VENUE**

21        26.     MAZDA resides in this district such that personal jurisdiction is

22  appropriate.  Defendant is deemed to reside in this district pursuant to 28 U.S.C. §

23  1391(a).

24        27.     In addition, a substantial part of the events or omissions giving rise to

25  these claims and a substantial part of the property that is the subject of this action are

26  in this district.

27        28.     Venue is thus proper in this Court pursuant to 28 U.S.C. § 1391(a).

28  ///

KNAPP,
PETERSEN
& CLARKE

-5-

1

## APPLICABLE LAW

2      29.    California State law applies to all claims in this action.

3                          ## FACTUAL ALLEGATIONS

4      30.    For years, MAZDA has designed, manufactured, distributed, sold, and
5  leased the Class Vehicles. MAZDA has sold, directly or indirectly, through dealers
6  and other retail outlets, thousands of Class Vehicles nationwide.

7      31.    This lawsuit concerns all Class Vehicles.

8      32.    Because of defects in the design, manufacture, and assembly of the
9  engines installed in the Class Vehicles, the Class Vehicles, and their engines, are by
10  their nature susceptible to frequent mechanical failure.

11      33.    The nature of the mechanical failure is that the engines of the Class
12  Vehicles are susceptible to engine flooding and fuel flooded spark plugs.

13      34.    The fuel flooding and fuel flooded spark plugs are caused by a defect in
14  the design, manufacture, and assembly of the rotary engines installed in the Class
15  Vehicles. When the engine floods, it will not start. Costly repairs are then necessary
16  in order to restore a Class Vehicle to operational condition.

17      35.    Mazda's Rotary Engine Core Warranty was extended to 8 years and
18  100,000 miles by Mazda due to the tens of thousands of engine flooding conditions
19  arising in Class Vehicles, described herein as the Engine Defect.

20      36.    The Class Vehicles originally came with a basic 4 year 50,000 mile
21  warranty. MAZDA began selling the Class Vehicles in 2003. Even before April of
22  2004, MAZDA was aware of the Engine Defect. On April 14, 2004, MAZDA issued
23  a TSB, TSB#01-011/04. Attached as Exhibit "1" is the April 14, 2004 TSB.

24      37.    MAZDA continued to monitor the complaints and mechanical failures
25  that occurred as a result of the Engine Defect, however, MAZDA never adequately
26  remedied the Engine Defect.

27      38.    In May of 2008, MAZDA extended the warranty on the Class Vehicles
28  so that the engines installed in the Class Vehicles would be covered under warranty

KNAPP,
PETERSEN
& CLARKE

-6-

1  for the first 8 years and 100,000 miles from the original warranty start date.

2  Attached as Exhibit "2" is the May 2008 warranty extension.

3      39.    The Warranty Extension was provided to owners and lessees of Class

4  Vehicles in order to address complaints relating to the Engine Defect. Although

5  MAZDA issued the Warranty Extension, MAZDA has never come up with an

6  adequate remedy in order to eliminate the Engine Defect.

7      40.    Furthermore, although MAZDA has issued the Warranty Extension,

8  which also purported to reimburse owners and lessees of Class Vehicles if they paid

9  money in order for repairs to be made as a result of the Engine Defect, MAZDA has

10  failed to arrange for and pay for all repairs under the Warranty Extension that have

11  been needed during the Warranty Extension time period due to the Engine Defect,

12  and MAZDA has failed to fully reimburse owners and lessees of Class Vehicles for

13  all charges they have incurred during the Warranty Extension time period due to

14  repairs that have been made relating to the Engine Defect.

15      41.    On December 26, 2008, MAZDA issued another TSB relating to the

16  Engine Defect, TSB#01-015/08. Attached as Exhibit "3" is the December 26, 2008

17  TSB.

18      42.    According to the TSB's Mazda is obligated to replace spark plugs as

19  part of the repair. However, Plaintiff is informed and believes and alleges that as of

20  May of 2013, MAZDA, in 37% of the 39,329 transactions analyzed, failed to pay for

21  spark plugs or replace spark plugs as part of repairs that it had otherwise covered

22  under warranty. Moreover, as of October of 2013, Plaintiff is informed and believes

23  and alleges thereon based on her analysis that there were 69,249 warranty claims

24  purportedly granted by Mazda for vehicle flooding, and in 33,419 of these

25  transactions, Mazda failed to replace or pay for the spark plugs as part of the repair.

26      43.    As a result of MAZDA's misconduct alleged herein, Plaintiff and the

27  other owners and lessees of Class Vehicles have been harmed and have suffered

28  actual damages, in that owners and lessees of Class Vehicles have incurred, and will

KNAPP,
PETERSEN
& CLARKE

-7-

1  continue to incur out of pocket unreimbursed costs and expenses relating to the

2  Engine Defect, or will be continued to be denied the full extent of Mazda warranty

3  coverage.

4      44.    MAZDA has caused Plaintiff and Members of the Class to expend

5  money at its dealerships or other repair facilities for purposes of repairing damage

6  caused by the Engine Defect, or has refused to provide Plaintiff and Class Members

7  with the full benefit of warranty coverage, despite MAZDA's knowledge that it was

8  breaching the extended warranty by not providing spark plugs as part of the warranty

9  repairs or by requiring that Plaintiff and Members of the Class to bear the cost of

10  replacing spark plugs as part of the warranty repairs required by the extended

11  warranty.

12      45.    MAZDA has failed and refused to recall, repair, correct or adequately

13  service Class Vehicles' Engine Defect, instead refusing to reimburse owners or

14  lessees of Class Vehicles repair costs incurred due to the defect, even repair costs

15  incurred during the warranty as extended by MAZDA, and MAZDA has also failed

16  and refused to provide Class Members with new spark plugs as part of covered

17  warranty repairs, or required them to bear the cost of these spark plugs.

18  **Mazda Has Violated The California Secret Warranty Law By Refusing To**

19  **Disclose To Customers An Adjustment Program Relating To The Engine Defect**

20      46.    MAZDA has violated, and continues to violate, California Civil Code

21  section 1795.90 et seq. (the "California Secret Warranty Law"). The California

22  Secret Warranty Law was enacted to abolish "secret" warranties. The term "secret

23  warranty" is used to describe the practice by which an automaker establishes a policy

24  to pay for repair of all or part of the damage sustained as a result of a defect without

25  making the defect or the policy known to the public at large. The California Civil

26  Code Section 1795.90, defines an Adjustment Program in connection with the Secret

27  Warranty law as follows:

28      47.    "Adjustment program" means any program or policy that expands or

KNAPP,
PETERSEN
& CLARKE

-8-

1  extends the consumer's warranty beyond its stated limit or under which a

2  manufacturer offers to pay for all or any part of the cost of repairing, or to reimburse

3  consumers for all or any part of the cost of repairing, any condition that may

4  substantially affect vehicle durability, reliability, or performance, other than service

5  provided under a safety or emission-related recall campaign. "Adjustment program"

6  does not include ad hoc adjustments made by a manufacturer on a case-by-case basis.

7      48.    The warranty in such circumstances is considered "secret" because all

8  owners are not notified of it.  Instead, the automaker usually issues a service bulletin

9  to its regional offices and/or dealers on how to deal with all or part of the repairs

10  necessitated by the defect, although a service bulletin or other formal document is

11  not necessary to create a secret warranty.

12      49.    MAZDA is a "manufacturer" as that term is defined by Section 1795.50

13  of the California Secret Warranty Law.  Section 1795.2 of the California Secret

14  Warranty Law imposes several duties on manufacturers like MAZDA, each of which

15  is designed to do away with secret warranties.

16      50.    Plaintiff and members of the proposed Class are consumers as that term

17  is defined by Section 1795.90(a) of the California Secret Warranty Law. The

18  California Secret Warranty law requires automakers to notify consumers, by first-

19  class mail, within 90 days of adoption, whenever they enact "any program or policy

20  that expands or extends the consumer's warranty beyond its stated limit or under

21  which [the] manufacturer offers to pay for all or any part of the cost of repairing, or

22  to reimburse consumers for all or any part of the cost of repairing, any condition that

23  may substantially effect vehicle durability, reliability, or performance [.]"

24      51.    The California Secret Warranty Law also requires automakers to

25  provide the New Motor Vehicle Board with a copy of the notice described above, so

26  the public can view, inspect, or copy that notice.

27      52.    Additionally, the California Secret Warranty Law requires automakers

28  to advise their dealers, in writing, of the terms and conditions of any warranty

KNAPP,
PETERSEN
& CLARKE

-9-

1 extension, adjustment, or reimbursement program.

2  53.   The California Secret Warranty Law also requires an automaker to

3 "implement procedures to assure reimbursement of each consumer eligible under an

4 adjustment program who incurs expenses for repair of a condition subject to the

5 program prior to acquiring knowledge of the program."  (Civ. Code, § 1795.92 (d).)

6  54.   The warranty accompanying Class Vehicles, including any warranty

7 extension which MAZDA offers in the circumstances of this case, specifies that such

8 maintenance items as replacement of spark plugs are not covered by its terms. The

9 warranty provisions relating to the power train limited warranty also specify that

10 replacement of spark plugs are not within the terms of the warranty coverage.

11  55.   As a result of the problems Class Vehicles sustained as a result of the

12 Engine Defect, MAZDA extended its warranty coverage on several occasions,

13 culminating in the 2008 warranty extension, attached as exhibit 2. However, these

14 warranty extensions do not in fact mention engine flooding, and instead refer to the

15 warranty being extended to cover the Rotary Engine Core, including the Rotary

16 Housing and Internal Parts, and Internal Seals and Gaskets. By their terms, the

17 warranty extensions do not extend the coverage of the warranty to engine flooding

18 caused by the Engine Defect, or damages resulting from engine flooding.

19  56.   However, MAZDA's 2008 TSB, attached as exhibit 3, and previous

20 TSB's specifically advise MAZDA dealers that if engine flooding occurs, then spark

21 plugs are covered under the terms of the warranty. The failure of MAZDA to advise

22 Class Members of what is covered under the extended warranty has thus lead to

23 numerous consumers not seeking to obtain from MAZDA repairs or reimbursement

24 for repairs necessitated by engine flooding.

25  57.   Thus, by extending its warranties (in its TSB's to dealers) to cover

26 engine flooding and the cost to repair engine flooding, caused by the Engine Defect,

27 including replacing spark plugs, MAZDA has "expand[ed] or extend[ed] the

28 consumer's warranty beyond its stated limit."

KNAPP,
PETERSEN
& CLARKE

-10-

1987469.1  08000/00933

58. Additionally, the vehicle performance problems that the repair work is intended to address "substantially affect the vehicle durability, reliability, or performance." Therefore, the offer to provide free repairs for engine flooding, including replacement of spark plugs, is an "adjustment program" within the meaning of the California Secret Warranty Law.

59. As a result of the foregoing, Defendant is obligated to comply with the provisions of the California Secret Warranty Law with respect to its extension of warranty coverage relating to engine flooding, including replacement of spark plugs. It has not done so.

60. Specifically, Defendant did not notify Plaintiff, or any other owner or lessee of a Class Vehicle of their right to free repair of engine flooding damage, including replacement of spark plugs, or to be reimbursed for the cost of the same, or reimbursement for the Engine Defect related damage.

61. Defendant has also refused to provide the free repair or reimbursement for the Engine Defect related damage to owners or lessees of affected vehicles who have specifically requested it.

62. Additionally, Defendant has refused to reimburse consumers who have paid to repair damage caused by the Engine Defect, including repair of engine flooding related damage as well as replacement of spark plugs which must be replaced when there has been any instance of such flooding.

63. Upon information and belief, Defendant did not comply with the dealer-notification provisions of the California Secrete Warranty Law.

64. Upon information and belief, Defendant has also failed to comply with the New Motor Vehicle Board notification procedures.

**TOLLING OF THE STATUTE OF LIMITATIONS**

65. Since the defects in the design or manufacture of the Class Vehicles cannot be detected until the defect manifests itself, Plaintiff and the Class Members were not reasonably able to discover the problem until after purchasing or leasing the

KNAPP,
PETERSEN
& CLARKE

-11-

1987469.1  08000/00933

1  Class Vehicles, despite their exercise of due diligence.

2      66.   Plaintiff and the Class Members had no realistic ability to discern that

3  the Class Vehicles were defective until after Plaintiff and the Class Members

4  experienced the Engine Defect. In addition, despite their due diligence, Plaintiff and

5  the Class Members could not reasonably have been expected to learn or discover that

6  they were deceived and that material information concerning the Class Vehicles had

7  been concealed from them until manifestation of the Engine Defect. Nor did

8  MAZDA ever advise Class Members, or Plaintiff, that they were entitled to have

9  their spark plugs replaced as part of the warranty repair required by the extended

10  engine core warranty necessary to rectify engine flooding, or that the extended

11  engine core warranty in fact extended to the work necessary to rectify engine

12  flooding or fuel fowled spark plugs. Therefore, the discovery rule is applicable to the

13  claims asserted by Plaintiff and the Class Members.

14      67.   Upon information and belief, MAZDA has known of the defect in the

15  Class Vehicles since at least 2004, if not earlier, and has concealed from or failed to

16  alert owners and lessees of the Class Vehicles of the full and complete nature of the

17  Engine Defect and the right of Class Members to insist that MAZDA pay the cost of

18  de-flooding work, replace spark plugs as part of any de-flooding repair work, or

19  reimburse consumers who bore the cost of spark plugs with respect to any such

20  repair.

21      68.   Any applicable statute of limitation has therefore been tolled by

22  MAZDA's knowledge, active concealment, and denial of the facts alleged herein.

23  MAZDA is further estopped from relying on any statute of limitation because of its

24  concealment of the defective nature of the Class Vehicles, and its refusal to honor its

25  warranty.

26                      **CLASS ACTION ALLEGATIONS**

27      69.   Plaintiff brings this lawsuit as a class action on behalf of herself and all

28  other Class Members similarly situated as members of the proposed Plaintiff Class

KNAPP,
PETERSEN
& CLARKE

-12-

1987469.1  08000/00933

1    pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3) and/or (b)(2).  This

2    action satisfies the numerosity, commonality, typicality, adequacy, predominance,

3    and superiority requirements of those provisions.

4        70.    The Class is defined as:

5            Class: All Persons in the United States who purchased or

6        leased a Class Vehicle.

7        71.    Excluded from the Class and are: (1) Defendant, any entity or division

8    in which Defendant has a controlling interest, and its legal representatives, officers,

9    directors, assigns, and successors; (2) the Judge to whom this case is assigned and

10   the Judge's staff; and (3) those persons who have suffered personal injuries as a

11   result of the facts alleged herein.  Plaintiff reserves the right to amend the Class

12   definition if discovery and further investigation reveal that the Class should be

13   expanded or otherwise modified.

14       72.    Numerosity: Although the exact number of Class Members is uncertain

15   and can only be ascertained through appropriate discovery, the number is great

16   enough such that joinder is impracticable.  Plaintiff is informed and believes and

17   based thereon alleges that at least 50,000 vehicles are part of the Class. The

18   disposition of the claims of these Class Members in a single action will provide

19   substantial benefits to all parties and to the Court.  The Class Members are readily

20   identifiable from information and records in Defendant's possession, custody, or

21   control, as well as from records kept by the Department of Motor Vehicles.

22       73.    Typicality: The claims of the representative Plaintiff are typical of the

23   claims of the Class in that the representative Plaintiff, like all Class Members,

24   purchased and leased a Class Vehicle designed, manufactured, and distributed by

25   MAZDA.  The representative Plaintiff, like all Class Members, has been damaged by

26   Defendant's misconduct in that she has incurred or will incur the cost of repairs

27   relating to the Engine Defect and/or spark plugs were not furnished as part of a de-

28   flooding repair.  Furthermore, the factual bases of MAZDA's misconduct are

KNAPP,
PETERSEN
& CLARKE

-13-

1987469.1  08000/00933

common to all Class Members and represent a common thread of deliberate misconduct resulting in injury to all Class Members.

74. <u>Commonality</u>: There are numerous questions of law and fact common to Plaintiff and the Class that predominate over any question affecting only individual Class Members. These common legal and factual issues include the following:

a. whether the Class Vehicles suffer from the Engine Defect;

b. whether Class Members are entitled to equitable relief, including but not limited to a preliminary and/or permanent injunction.

c. Whether Defendant should be declared financially responsible for notifying all Class Members of the problems with the Class Vehicles and for the costs and expenses of repair and replacement of the Class Vehicles;

d. Whether Defendant breached the express terms of its own warranty by refusing to repair damage caused by the Engine Defect during the term of the warranty, including but not limited to refusal to pay for or provide spark plugs as part of warranty repairs;

e. Whether offers to repair damage caused by flooding, including replacement of spark plugs, and/or reimbursement for the Engine Defect related damage are "adjustment programs" under the Secret Warranty Law;

f. Whether Defendant is obligated to inform California Class Members of their right to seek reimbursement for having paid for Engine Defect related damage, or for not being furnished spark plugs as part of covered warranty repairs, or for being required to pay for spark plugs as part of covered warranty repairs.

75. <u>Adequate Representation</u>: Plaintiff will fairly and adequately protect the interests of the Class Members. Plaintiff has retained attorneys experienced in the prosecution of class actions, including consumer and product defect class actions, and Plaintiff intends to prosecute this action vigorously.

///

KNAPP,
PETERSEN
& CLARKE

-14-

1987469.1  08000/00933

76.   <u>Predominance and Superiority</u>: Plaintiff and the Class Members have all suffered and will continue to suffer harm and damages as a result of Defendant's unlawful and wrongful conduct.  A class action is superior to other available methods for the fair and efficient adjudication of the controversy.  Absent a class action, most Class Members would likely find the cost of litigating their claims prohibitively high and would therefore have no effective remedy at law.  Because of the relatively small size of the individual Class Members' claims, it is likely that only a few Class Members could afford to seek legal redress for Defendant's misconduct.  Absent a class action, Class Members will continue to incur damages, and Defendant's misconduct will continue without remedy.  Class treatment of common questions of law and fact would also be a superior method to multiple individual actions or piecemeal litigation in that class treatment will conserve the resources of the courts and the litigants, and will promote consistency and efficiency of adjudication.

## FIRST CAUSE OF ACTION

**(Violation of UCL California Business & Professions Code § 17200, et seq.)**

77.   Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

78.   Plaintiff brings this cause of action on behalf of herself and on behalf of the Class Members.

79.   California Business & Professions Code § 17200 prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice" and "unfair, deceptive, untrue or misleading advertising."

80.   Plaintiff and the Class Members are reasonable consumers who do not expect their Class Vehicles to experience the Engine Defect.  That is the reasonable and objective consumer expectation relating to the Class Vehicles.

81.   Defendant knew that the Class Vehicles suffered from an inherent defect, were defectively designed or manufactured, would experience the Engine Defect, and were not suitable for their intended use.

KNAPP,
PETERSEN
& CLARKE

-15-

1987469.1  08000/00933

82.   Defendant has failed to repair the Engine Defect.  Defendant has also failed to reimburse consumers for costs incurred in connection with the Engine Defect even when these repair costs were covered by the terms of its extended warranty. Defendant has also refused to offer all consumers the full benefit of its extended warranty, by not replacing the spark plugs or making consumers bear the costs of the spark plugs, as part of de-flooding work covered by its extended warranty. Nor has Defendant notified consumers that replacement of spark plugs (and vehicle de-flooding work) is covered by the terms of its extended warranty.

83.   By its conduct, Defendant has engaged in unfair competition and unlawful, unfair, and fraudulent business practices.

84.   Defendant's unfair or deceptive acts or practices occurred repeatedly in Defendant's trade or business, and were capable of deceiving a substantial portion of the purchasing public.

85.   As a direct and proximate result of Defendant's unfair, unlawful and deceptive practices, Plaintiff and the Class have suffered and will continue to suffer financial harm and Defendant is obligated to make restitution for this financial harm.

86.   Defendant has been unjustly enriched and should be required to make restitution to Plaintiff and the Class pursuant to §§ 17203 and 17204 of the Business & Professions Code.

## SECOND CAUSE OF ACTION

### (Breach of Express Warranty)

87.   Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

88.   Plaintiff brings this cause of action against Defendant on behalf of herself and on behalf of the Class Members.

89.   Defendant was at all relevant times the manufacturer, distributor, warrantor, and/or seller of Class Vehicles.  Defendant knew or had reason to know of the specific use for which the Class Vehicles were purchased.

KNAPP,
PETERSEN
& CLARKE

-16-

1987469.1  08000/00933

90.     Defendant provided Plaintiff and Class Members with an express warranty that Class Members would be reimbursed for any repair costs incurred for damage to Class Vehicles which related to the Engine Defect, up to 8 years from the inception of the warranty, as long as the mileage on the Class Vehicle had not exceeded 100,000 miles.

91.     Defendant also furnished numerous technical service bulletins to its dealers advising them that replacement of spark plugs was required under the terms of its extended warranty.

92.     Class Members, including Plaintiff, incurred repair costs relating to the Engine Defect which were covered by the express terms of the warranty, or were not furnished with new spark plugs as part of covered warranty repairs.

93.     Defendant has wrongfully refused to cover the costs of repairs that have resulted from said Engine Defect, or to perform all such repairs. This refusal is a breach of the express warranty. This refusal has resulted in Plaintiff and members of the class suffering damage.  Furthermore, Defendant continues to refuse to pay for the repairs which are necessary as a result of the Engine Defect, or to perform all the work required under its warranty, wrongfully indicating to consumers that the damage or replacing spark plugs is not covered by the terms of the express warranty.

94.     Defendant's failure to repair the Engine Defect related damage under the terms of the express warranty (and its failure to replace spark plugs or its requiring consumers to bear the cost of spark plugs in tens of thousands of warranty transactions) has caused the warranty to fail for its essential purpose, as a result of which Plaintiff and the class are entitled to damages flowing from the breach of express warranty.

### THIRD CAUSE OF ACTION
### (California Secret Warranty Law)

95.     Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

-17-

1987469.1  08000/00933

96.    Plaintiff brings this cause of action on behalf of herself and on behalf of the Members of the Class.

97.    By committing the acts and practices alleged herein, Defendant violated the Secret Warranty Law.

98.    Defendant's violation of the Secret Warranty Law continues to this day. As a direct and proximate result of Defendant's violations of the Secret Warranty Law Plaintiff has paid to conduct repairs to her Class Vehicle arising as a result of the Crank No Start Defect, and/or has not been provided spark plugs as part of covered warranty repairs.

99.    Plaintiff and Class Members seek an order of this Court requiring Defendant to comply with the terms of the California Secret Warranty Law by (a) notifying Class Members of the secret repair work performed to rectify Engine Defect related damage to Class Vehicles, and their right to seek reimbursement for any money they spent paying to repair said damages; (b) providing free Engine Defect related repairs, modification, correction, and replacement to all Class Members, including providing spark plugs as part of the repair; (c) identifying and reimbursing all Class Members who have paid for Engine Defect related repairs, and Class Members who have not been furnished spark plugs as part of the repairs; (d) notifying dealers of the facts underlying the Engine Defect and the terms of the secret warranty work relating to repair of engine flooding and replacement of spark plugs occasioned by the Engine Defect; and (e) notifying the California New Motor Vehicle Board as required by the Secret Warranty Law.

100.    Plaintiff and Class Members also seek an order (i) enjoining Defendant from failing and refusing to make full restitution of all moneys wrongfully obtained as a result of its violations of the California Secret Warranty Law, and (ii) disgorging to Plaintiff and Class Members all ill-gotten revenues and/or profits earned as a result of Defendant's violation of the California Secret Warranty Law, plus an award of attorneys' fees and costs.

-18-

KNAPP,
PETERSEN
& CLARKE

1987469.1  08000/00933

# RELIEF REQUESTED

101.   Plaintiff, on behalf of herself, and all others similarly situated, requests the Court to enter judgment against Defendant, as follows:

   a.   An order certifying the proposed Class, designating Plaintiff as named representative of the Class, and designating the undersigned as Class Counsel;

   b.   A declaration that Defendant is financially responsible for notifying all Class Members about their right to spark plugs as part of any repair under the extended warranty;

   c.   An order requiring Defendant to comply with the Secret Warranty Law;

   d.   An award to Plaintiff and the Class of compensatory, exemplary, and statutory damages, including interest, in an amount to be proven at trial;

   e.   An award to Plaintiff and the Class of any repair costs they are owed under the terms of Defendant's express warranty, or requiring MAZDA to provide Class Members the spark plugs, or cost thereof, which were not furnished as part of any repair covered under warranty;

   f.   A declaration that Defendant must disgorge, for the benefit of the Class, all or part of the ill-gotten profits it received from the sale or lease of the Class Vehicles, or make full restitution to Plaintiff and Class Members;

   g.   An award of attorneys' fees and costs, as allowed by law;

   h.   An award of attorneys fees and costs pursuant to California Code of Civil Procedure § 1021.5;

   i.   An award of pre-judgment and post-judgment interest, as provided by law;

   j.   Leave to amend the Complaint to conform to the evidence produced at trial; and

   k.   Such other relief as may be appropriate under the circumstances.

///

KNAPP,
PETERSEN
& CLARKE

-19-

1987469.1  08000/00933

## **DEMAND FOR JURY TRIAL**

102.   Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of any and all issues in this action so triable of right.

Dated:  April 1 , 2014

KNAPP, PETERSEN & CLARKE

By: _____

Stephen M. Harris
Attorneys for Plaintiff
CHRISTINA PASCHAL,
individually, and on behalf of a class
of similarly situated individuals

KNAPP,
PETERSEN
& CLARKE

-20-

1987469.1  08000/00933